**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| L. W. RUSS, *individually and on behalf of all others similarly situated*, Plaintiffs, | Case No. 2:21-cv-02325 |
| v. | Judge Guidry |
| CANAL BARGE COMPANY, INC. | Magistrate Judge North |
| Defendant. | Section: "T" (5) |

**JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT**

Landan Russ and Benjamin Noonan (collectively, "Plaintiffs") and Canal Barge Company, Inc. ("Canal Barge") (collectively, the "Parties") submit this joint motion for approval of the Parties' settlement of Plaintiffs' claims brought against Canal Barge under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. The Parties' Settlement Agreement and Release (the "Settlement Agreement") represents a fair and reasonable resolution of a *bona fide* dispute over the FLSA claims and meets the standards for judicial approval. The Court should approve the agreement in full.

The Parties' Settlement Agreement provides Plaintiffs with a reasonable recovery in light of the risks inherent in continued litigation and trial. Canal Barge has defended the claims asserted in this lawsuit and continues to deny that it committed any wrongdoing or violated any state or federal wage and hour law. Given the costs, risks, and delays inherent to protracted litigation balanced against the benefits of this settlement, the Parties' Settlement Agreement is in both parties' best interest.

Accordingly, the Parties respectfully request the Court approve the Settlement Agreement in full.

## 1. PROCEDURAL HISTORY

Russ filed this putative collective action on December 17, 2021, on behalf of themselves and other similarly situated employees of Canal Barge for allegedly worked but unpaid time completing certain required paperwork at home and for certain "changeover" time. ECF 1. Canal Barge denied Plaintiffs' allegations and raised several affirmative defenses. ECF 9.

The Parties agreed to conditionally certify a FLSA collective action and moved the Court for approval to distribute notice to the putative collective action members. ECF 22. The Court granted the Parties agreed-to motion and defined a collective of "all (1) current and former shore tankermen of [Canal Barge], (2) did any work in the state of Louisiana, or (3) lived in the state of Louisiana while concurrently employed by [Canal Barge], and (4) were not identified by Canal Barge as potential opt-in plaintiffs in *Tilley, et al. v. Canal Barge Company, Inc.*, Civil Action No. 4:21-cv-01150." ECF 23. Notice was provided to the putative collective action members. Two (2) individuals joined the lawsuit as plaintiffs, ECF 24 and 25, however, one (1) opt-in Plaintiff, Nashall Williams, eventually withdrew his consent to join the lawsuit as a plaintiff. ECF 34.

Over the course of this lawsuit, the Parties have exchanged numerous documents, including, Plaintiffs' timesheets and pay records of the Plaintiffs and opt-in Plaintiffs. After exchanging documents, the Parties engaged in settlement negotiations and were able to reach an agreement to consensually resolve this lawsuit.

The Parties have executed a formal Settlement Agreement (Exhibit 1) that the Parties now request the Court approve their settlement.

## 2. SUMMARY OF THE SETTLEMENT AGREEMENT'S KEY TERMS.

### A. The Maximum Settlement Amount.

As set forth in the Settlement Agreement (Exhibit 1), the Parties have reached a settlement that provides each Plaintiff with a reasonable recovery of their unpaid overtime claims. The settlement

amount includes the settlement payments to Plaintiffs and Plaintiffs' Counsel's attorneys' fees and out-of-pocket litigation expense.

Under the Settlement Agreement, the Parties agreed to specific payments for each Plaintiff as well as an award of attorneys' fees and costs. The Maximum Settlement Amount is $33,289.73.

**B. Attorney's Fees and Costs.**

Plaintiffs' Counsel shall receive his attorney's fees and costs in the total amount of $12,117.00, representing 36% of the Maximum Settlement Amount (as defined in the Settlement Agreement)—a percentage that is routinely approved by courts. All attorneys' fees and litigation expenses are included in the Gross Settlement Amount, and Canal Barge shall not make any payment beyond the Gross Settlement Amount.

Plaintiffs' Counsel's attorneys' fees and costs will be distributed in a single check that will be reported on an IRS Form 1099.

**C. Plaintiffs' Settlement Payments.**

The Parties agreed to a specific and independent settlement payment for each Plaintiff. To calculate, the Parties analyzed the Plaintiffs' timesheets and pay records and developed a number of assumptions by which the amount of the settlement payments were calculated. First, an assumption regarding the amount of time Plaintiffs spent for each instance of allegedly unpaid compensation. The Parties disagreed as to the amount of time to be used for the assumption: Plaintiffs estimated they spent at least one (1) hour in each instance they performed off the clock work at home, while Canal Barge estimated the amount of time at fifteen (15) minutes for each instance. Over the course of settlement negotiations, the Parties reached an agreement on a reasonable time assumption to be used. Second, the Parties disagreed, but were able to reach a compromise regarding how certain hours for which Plaintiffs were paid, but did not work, would be factored into the amount of each Settlement Payment.

The Settlement Payments were calculated by multiplying the time assumption by each instance when a Plaintiff allegedly performed off-the-clock work in each workweek. From there, the number of additional hours were classified as either straight time or overtime depending on the number of hours Plaintiffs worked in a week. Then a partial credit was given for the number of paid, but unworked hours for each Plaintiffs. This resulted in the Settlement Payments set forth in the Agreement and the Parties assert these amounts represent a reasonable settlement of Plaintiffs' claims considering the inherent risks of litigation and the factual disputes between the Parties.

Plaintiffs' Settlement Payments will be distributed to each Plaintiff in two checks: 50% of the individual's Settlement Payment will be classified as wages from which the required tax withholdings will be taken and reported on an IRS Form W-2; 50% of the individual's Settlement Payment will be classified as non-wage damages and will be reported on an IRS Form 1099.

**D. Release of Claims Against Canal Barge.**

Plaintiffs will receive their Settlement Payment and agreed to a general release of claims they may have against Canal Barge. The Settlement Agreement is intended to constitute a complete discharge of any and all liability of Canal Barge to Plaintiffs.

**3. THE COURT SHOULD APPROVE THE PARTES' SETTLEMENT.**

**A. The Legal Standard for Approval of FLSA Settlements.**

The Parties now seek the Court's approval of their Settlement. The Settlement represents a fair and reasonable compromise of a *bona fide* dispute concerning the allegations that Canal Barge did not fully compensate Plaintiffs for all hours worked during the relevant time period.

Under the FLSA, covered employers must pay non-exempt employees overtime for all hours worked over forty (40) in a workweek. 29 U.S.C. § 207. An employer who violates the Act is liable for the unpaid overtime and may be liable for "an additional equal amount as liquidated damages" if the employer cannot "show to the satisfaction of the court that the act or omission giving rise to such

action was in good faith." 29 U.S.C. §§ 216(b), 260. "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Id.* The statute of limitations for claims under the FLSA is two years, or three years if the employer's violation was willful. 29 U.S.C. § 255(a).

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee… affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). FLSA claims may be compromised after the court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Villeda v. Landry's Rests., Inc.,* No. H–08–2287, 2009 WL 3233405, at *1 (S.D. Tex. Oct. 7, 2009) (citing *Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor,* 679 F.2d 1350, 1353 (11th Cir. 1982)). "If the settlement reflects 'a reasonable compromise over issues,' the court may approve it." *Villeda,* 2009 WL 3233405, at *1 (quoting *Lynn's,* 679 F.2d at 1354). When a court scrutinizes an FLSA settlement agreement, it must determine that the compromise is a fair and reasonable resolution of a *bona fide* dispute over the FLSA's provisions. *See Lynn's Food Stores*, 679 F.2d at 1355.

**B. The Court Should Approve the Parties' Settlement.**

**i. The Settlement Resolves a *Bona Fide* Dispute.**

The Court can approve a settlement where there is a "bona fide dispute" amongst the parties. *See, e.g., Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 163 (5th Cir. 2015). "The requirement of an adversarial posture between parties to a settlement agreement operates as a guarantee that employers cannot profit by coercing employees into waiving their rights, and then dressing that invalid waiver of the FLSA's protections as a valid settlement of a legal claim." *Sims v. Hous. Auth. of City of El Paso*, No. EP-10-CV-109-KC, 2011 WL 3862194, at *6 (W.D. Tex. Sept. 1, 2011). "An actual dispute over the amount of overtime compensation due to an employee [can be] sufficient to create a bona fide dispute

for purposes of this factor." *Shaw v. CAS, Inc.*, No. 5:17-CV-142, 2018 WL 3621050, at *1 (S.D. Tex. Jan. 31, 2018). In addition, a dispute as to whether employees were "misclassified as exempt" from the FLSA's protections can create a *bona fide* dispute. *Id.* at *2.

There is no question a *bona fide* dispute in this matter exists between the Parties. Here, the Parties contested the claims and defenses asserted in the Lawsuit. Plaintiffs alleged Canal Barge failed compensate Plaintiffs for all of their hours worked. Plaintiffs allege they were required to perform work at home for which they were not compensated and time spent performing shift "change overs" for which they were not compensated as well. Further, these allegations raised additional factual disputes that would have required substantial litigation to resolve, mainly, determining the actual amount of time it took for Plaintiffs to complete the "at home" work for which they alleged they were not compensated. Additionally, Canal Barge's pay practice applicable to Plaintiffs provided them with a guaranteed number of hours for which they would be compensated each pay period. In other words, if a Plaintiff did not work a total of 80 hours during a two-week pay period, Canal Barge compensated Plaintiffs a total of 80 hours for the pay period, even though not all of those hours were actually worked. As such, factual and legal issues existed regarding the treatment of compensation for those "minimum hours" for which Plaintiffs received compensation but did not work.

The Parties further disagreed on whether Plaintiffs could satisfy their burden to demonstrate that Canal Barge acted willfully, which in turn affects whether they could recover compensation for two (2) years or three (3) years. *See* 29 U.S.C. § 255. Plaintiffs also contend that Canal Barge would not be able to meet their burden to prove that Canal Barge acted in good faith in classifying and compensating Plaintiffs, which would implicate the amount, if any, of liquidated damages. *See* 29 U.S.C. § 260. Canal Barge maintained that it acted in good faith, and not willfully, so that damages (if any) should not include liquidated damages and could only be recovered for a two-year period.

The Parties have fully analyzed the pertinent factual and legal issues in this case, as well as having assessed the strengths and weaknesses of the claims and defenses at issue.

The Parties worked to resolve various complex, disputed issues, such as issues regarding damage calculations. If this case was not settled, there would undoubtedly be extensive future work to come, including dispositive motions, depositions, associated discovery disputes including possible subpoenas to a substantial number of third-parties, questions regarding applicability of the FLSA, good faith, willfulness, decertification, pretrial motions, trial, and potential appellate issues. Accordingly, the Parties engaged in significant work and recognized and appreciated the risks in proceeding if this case were not settled, and recognized that their settlement represented a compromise of the range and uncertainty of their damages.

Finally, Plaintiffs and Plaintiffs' Counsel believe that this settlement is in their best interest. The Parties disputed the amount of allegedly off-the-clock work Plaintiffs performed, the appropriate treatment of the "minimum hours," and whether Plaintiffs were entitled to liquidated damages. If the matter was not resolved by settlement, there is a risk that Plaintiffs would not succeed. Litigating Plaintiffs' FLSA claims would have been time-consuming and expensive for all Parties, and should Plaintiffs have ultimately prevailed, the additional time prior to Plaintiffs receiving relief, if any, could have been substantial.

As such, the current Settlement before the Court is the result of a *bona fide* and contested dispute where serious questions of law and fact exist that place the ultimate outcome of the litigation in doubt. Without the Parties' willingness to engage in settlement discussions, this case would have not been resolved.

**ii. The Terms of the Settlement are Fair and Reasonable.**

"There is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, Case No. 09-682, 2010 WL 1688793, at *1 (M.D. La. Apr. 26, 2010) (citing

*Camp v. Progressive Corp.*, Case Nos. 01-2680, 03-2507, 2004 WL 2149079, at *5 (E.D. La. Sept. 23, 2004)). In addition, the fact "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id.*

Here, the Agreement was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Counsel for all Parties have considerable experience in prosecuting, defending, and settling federal and state wage-and-hour claims, and in this case were particularly well informed as to the facts and circumstances of the Lawsuit after extensive formal and informal discovery on all issues over the life of this litigation. *See Cotton v. Hinton*, 559 F. 2d 1326, 1330 (5th Cir. 1977) (holding that the court is "entitled to rely upon the judgment of experienced counsel for the parties" in assessing a settlement and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel"); *Shaw v. CAS, Inc.*, No. 5:17-cv-142, 2018 WL 3621050, at *3 (S.D. Tex. Jan. 31, 2018) (preliminarily approving settlement where counsel believed settlement was reasonable and adequate based on "comprehensive knowledge of the facts and legal issues"); *Liger v. New Orleans Hornets NBA Ltd. P'ship*, No. 05-1969, 2009 WL 2856246, at *4 (E.D. La. Aug. 28, 2009) ("The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a . . . settlement.") (internal citations omitted); *see also Austin v. Pa. Dep't of Corrs.*, 876 F.Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 667 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446, 452 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

The Parties have been litigating this case since 2021. The Parties conducted discovery, disputed damages, and liability which informed the Parties' respective positions on all issues in this case. And after the Parties reached an agreement in principle, the Parties engaged in further negotiations concerning the specific terms of the settlement and the scope of the Agreement. Indeed, it cannot be gainsaid that the settlement documents ultimately approved and executed by the Parties are the result of very comprehensive discussions, as well as exhaustive and hard-fought negotiations.

It is important to note that Plaintiffs deem this settlement fair and reasonable. This is the agreement that the Parties have presented to the Court for approval. *See Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed."); *Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) ("[T]he court cannot modify the bargained-for terms of the [class-action] settlement agreement.").

**4. THE ATTORNEYS' FEES AND COSTS ARE REASONABLE.**

The amount of Plaintiffs' Counsel's attorneys' fees under the Settlement Agreement is reasonable, fair and an important provision of the Parties' agreement. The FLSA provides "[t]he court … **shall**, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added); Class Counsel's request for a 33% fee is also fair and reasonable and Canal Barge does not oppose such an award. The Fifth Circuit recognizes that a contingency fee is desirable because it is predictable, encourages settlement, and reduces incentives for protracted litigation. *Union Asset Mgmt. v. Dell, Inc.*, 669 F.3d 632, 643-44 (5th Cir. 2012). Within the Fifth Circuit, customary contingency fees for class funds have ranged from 33.33% to 50%. *See In re Bayou Sorrel Class Action*, No. 6:04CV1101, 2006 WL 3230771, at *1 (W.D. La. Oct. 31, 2006). In FLSA cases such as this, the "customary contingency" in the Fifth Circuit is within the range of 35% to 40%. *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th

Cir. 2001) (awarding a 40% contingency fee award in an FLSA matter); *Legros v. Mud Control Equip., Co.*, No. CV 15-1082, 2017 WL 925730, at *3 (W.D. La. Mar. 6, 2017) (same); *Heffernan Bryant v. United Furniture Indus., Inc.*, No. 1:13CV246-SA-DAS, 2017 WL 639320, at *5 (N.D. Miss. Feb. 16, 2017) (same); courts routinely approve settlements that includes an agreed upon fee equal to 40% of the common fund (in very similar litigation); s*ee also Nigh, et al. v. Energy Professionals Group, LLC, et al.*, No. 4:18-cv-01103, Doc. 89 (S.D. Tex. Mar. 11, 2020); *Whitaker v. BHP Billiton Petroleum (Americas) Inc.*, No. 4:17-cv-02698, at ECF No. 30 (S.D. Tex. Aug. 7, 2019) (approving settlement agreement and 40% attorneys' fees in a case involving drilling consultants paid a day-rate); *Matthews v. Priority Energy Servs., LLC*, No. 6:15CV448, 2018 WL 1939327, at *1 (E.D. Tex. Apr. 20, 2018), adopted, 2018 WL 2193030 (E.D. Tex. May 11, 2018) (same);.

Supreme Court precedent not only permits but endorses settlement of attorney's fees in aggregate litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."); *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) ("parties [are] entitled to settle the attorney fee issue, and no law g[ives a] district court authority to interfere with that unconditional right"). The parties reached the agreed upon fee as part of their settlement discussions which ensures Plaintiffs will be paid promptly. To the extent approval is necessary, it should be given here.

Further, this is the agreement the Parties have presented to the Court for approval. *See Evans v. Jeff D.*, 475 U.S. 717, 727 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed."); *Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) (holding, in a class action, "the court cannot modify the bargained-for terms of the settlement agreement"); *In re Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 910 F.Supp.2d 891, 944 (E.D. La. 2012) ("[T]he Court is not authorized to insist upon changes that, in its judgment, might

lead to a superior settlement."), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014), *reh'g en banc denied sub nom. In re Deepwater Horizon—Appeals of the Economic and Property Damage Class Action Settlement*, 756 F.3d 320 (5th Cir. 2014), *cert. denied sub nom. BP Exploration & Prod, Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S.Ct. 754 (2014). Courts have found that "any process of judicial review and approval of stipulated attorneys' fees in the event of a settlement of civil rights litigation is more deferential than resolving attorneys' fees in a disputed case." *See, e.g.*, *Melgar v. OK Foods*, 902 F.3d 775 (8th Cir. 2018) (reversing district court's reduction of attorney fees from the agreed-upon settlement amount in an FLSA action).

The Parties have been pursuing this matter since December 2021. Plaintiffs' Counsel has spent considerable time prosecuting this matter. All Parties, including the Plaintiffs, believe Plaintiffs' Counsel's fees and costs as set forth in the Settlement Agreement is reasonable and necessary in this case.

**5. CONCLUSION.**

The Parties believe that the terms and conditions of the Agreement are fair, reasonable, adequate, and in the best interests of all Parties. As noted above, this proposed Agreement was reached following the exchange of information and data obtained from Canal Barge and after extensive negotiations. The Settlement provides Canal Barge with the highest possible absolution to resolve the pay practice at issue. Because of the various defenses asserted by Canal Barge and the possibility that Canal Barge may have successfully defeated or limited some or all of Plaintiffs' claims, including those claims related to willfulness, liquidated damages, and compensation for unpaid overtime, the Parties believe that the settlement represents a fair compromise of a *bona fide* dispute. Moreover, given the strong likelihood that absent a settlement this case would have proceeded to lengthy and drawn-out litigation, a compromise of the claims prevents all Parties from incurring the additional costs and delay associated with trial and possible appeal.

The Parties hereby request that the Court: (1) approve this settlement, including all of the terms set forth in the Agreement; (2) direct the Parties to implement the settlement process as set forth in the Agreement; and (3) dismiss the claims of Plaintiffs with prejudice.

Respectfully submitted, this 12th day of July 2023.

*/s/Kerry V. O'Brien*
**Kerry V. O'Brien (Texas Bar 24038469)**
**O'BRIEN LAW FIRM**
1011 Westlake Drive
Austin, Texas 78746
Telephone: 512-410-1960
Facsimile: 512-410-6171
ko@obrienlawpc.com

**COUNSEL FOR PLAINTIFFS**

*/s/ Mark Klyza (by KVO with permission)*
**S. Mark Klyza (*pro hac vice*)**
**Bryan Edward Bowdler (*pro hac vice*)**
**THE KULLMAN FIRM, PLC**
1600 Poydras Street, Suite 1600
New Orleans, Louisiana
Telephone: 504-524-4162
Facsimile: 504-596-4114
smk@kullmanlaw.com
beb@kullmanlaw.com

**ATTORNEYS FOR DEFENDANT**